2023 IL App (2d) 230175
No. 2-23-0175
Opinion filed October 23, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* L.B., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| | ) | |
| | ) | Nos. 21-AD-51 |
| | ) | 22-FA-89 |
| | ) | |
| (David S. and Shaina Mary S., | ) | Honorable |
| Petitioners-Appellees, v. Joshua B., | ) | Stacey L. Seneczko, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Kennedy concurred in the judgment and opinion.

**OPINION**

¶ 1       The respondent, Joshua B., appeals from the judgment of the circuit court of Lake County

terminating his parental rights to his daughter, L.B., and allowing the petitioners, David S. and

Shaina Mary S., to adopt her. On appeal, Joshua argues that the trial court erred in finding that he

was an unfit parent. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3       Joshua and Shaina are the biological parents of L.B. L.B. was born on October 8, 2016, in

Libertyville. On January 19, 2019, Joshua moved to Florida. On March 25, 2019, Shaina and L.B.

moved to Florida to be with Joshua. On April 2, 2019, Joshua left the family's apartment and did

not subsequently reside there. On April 7, he sent Shaina a text message informing her that he was not coming back. He did return, however, several times over the next month to visit L.B.

¶ 4 On May 7, 2019, Joshua informed Shaina that he was living with another woman. Based on Shaina's response to that information, Joshua did not believe that Shaina would allow him to see L.B. anymore. However, he did see L.B. a couple more times that month. Joshua hired an attorney later that month to file proceedings to enable him to see L.B.

¶ 5 Joshua last saw L.B. on July 7, 2019, at a Walmart store. He met Shaina there to help her get a key because she had locked herself out of her apartment. On July 10, Shaina and L.B. moved back to Illinois.

¶ 6 On September 17, 2019, Shaina filed in the circuit court of Cook County a petition for an order of protection, alleging that Joshua had abused her and L.B. She obtained an emergency order of protection that prohibited Joshua from having contact with her and L.B.

¶ 7 On October 2, 2019, following a hearing, a Florida court entered a temporary parenting schedule providing that Joshua would have alternating months with L.B. The schedule was to start on October 5, with each party traveling to Nashville, Tennessee, to exchange the child. Joshua did not travel to Tennessee in October to get L.B. because of the order of protection that had been entered against him in Illinois.

¶ 8 On November 8, 2019, the order of protection was terminated and the domestic violence proceedings were dismissed.

¶ 9 On November 20, 2019, following a hearing, which Shaina attended by phone, the Florida court entered a custody schedule. The Florida court ordered that Joshua was to pick up L.B. at Shaina's father's home in Roselle on November 23, 2019, at 2:30 p.m. Shaina was then to retrieve the child at Joshua's home in Panama City, Florida, on December 21, 2019, at 2:30 p.m. Joshua

would then start his previously ordered parenting time by receiving L.B. in Nashville, Tennessee, on December 28, 2019. In so ruling, the Florida court noted that it had conferred with the trial court in Cook County and found that Shaina had filed her Cook County action to interfere with Joshua's relationship with L.B.

¶ 10    On November 23, 2019, Joshua traveled to Roselle to get L.B. Shaina informed him that she was not going to let him leave with L.B. She did, however, indicate that Joshua could visit L.B. Joshua did not visit L.B. because he believed that, if he did, Shaina would again accuse him of domestic violence. Joshua did not attempt to enforce the Florida custody order, as he had to return to Florida promptly because he and his new wife had left her children in the care of a relative.

¶ 11    Upon returning to Florida, Joshua discussed with his attorney remedies under the Florida criminal statutes regarding custody offenses, but he declined to take any action because he believed that it would be traumatic for L.B.

¶ 12    From December 2019 until September 2021, nothing happened in the Florida court other than a court-ordered mediation, which was cancelled by the court in April 2020. On September 8, 2021, the Florida court stayed the proceedings in Florida on the condition that a child custody proceeding was to be promptly commenced in Illinois.

¶ 13    On September 9, 2021, Shaina and David, her husband, filed in the circuit court of Lake County a petition for adoption. The petition sought to terminate Joshua's parental rights. The petition alleged that Joshua had failed to maintain a reasonable degree of interest, concern, or responsibility as to L.B.'s welfare. The petition asserted that Joshua had not had any contact with L.B. since April 2019 and that he had failed to financially support her. The petition further alleged that Joshua had deserted L.B. for more than three months prior to the commencement of the adoption proceedings.

¶ 14    On March 16, 2022, Joshua filed in the circuit court of Lake County a petition for allocation of parental responsibility and for injunctive relief. On July 20, 2022, Joshua's petition was consolidated with David and Shaina's petition for adoption.

¶ 15    Between April 24 and May 3, 2023, the trial court conducted a hearing on the petitions. At that hearing, Joshua acknowledged that, even though he earned a substantial income, he had not provided any financial assistance to L.B. since April 2019. (Joshua's income was over $100,000 in both 2021 and 2022.) He had not sent her any gifts or corresponded with her. He had not contacted Shaina to ask about L.B. since November 2019. He acknowledged that he could have, as he had both Shaina's telephone number and e-mail address. Joshua explained that he did not send any cards or gifts to L.B. because he did not believe that she would receive them.

¶ 16    Kim B., Joshua's mother, testified that she visited L.B. in Illinois about 10 times and that, when she requested to visit, Shaina never refused her request. Kim spoke to L.B. on the telephone more than once a week. Kim talked to Joshua five or six times a month. During their conversations, Joshua always asked about L.B.

¶ 17    At the close of the hearing, the trial court granted David and Shaina's petition to adopt and terminated Joshua's parental rights. The trial court found that Joshua was unfit due to his failure to maintain a reasonable degree of interest, concern, or responsibility as to L.B.'s welfare. The trial court also found that Joshua was unfit because he had deserted the child for more than three months prior to the commencement of the adoption proceedings.

¶ 18    The trial court noted that Shaina's actions in 2019 had hindered Joshua's ability to visit L.B. In 2019, Shaina relocated from Florida to Illinois without court authorization. She had failed to comply with Florida court orders and was found in indirect civil contempt. The trial court then stated that, despite Shaina's bad conduct in 2019:

"Joshua did not pursue the contempt finding further nor did he seek to hold her in contempt for failure to comply with the November 20, 2019, order. He did not seek to revoke her parenting time or suspend it, nor did he seek to be named the custodial parent. In fact, he took no further action to enforce his parental rights until after the petition for adoption was filed [in 2021]."

¶ 19    The trial court noted that Shaina had filed orders of protection against Joshua and he was worried that she would file more. The trial court found that:

"[I]t is not reasonable that his purported fear of Shaina seeking additional orders would prevent him from even attempting to reach out to his daughter by telephone, letters, cards, gifts, or any other means.

        While he may have believed that such efforts would have been futile, the fact is that he did not even try."

¶ 20    The trial court further noted that, while Joshua's inquiries to Kim regarding L.B. demonstrated some interest, it was not a reasonable interest even considering the obstacles he faced.

¶ 21    As to desertion, the trial court explained that desertion connotes conduct that indicates an intention to permanently terminate custody over the child while not relinquishing all parental rights. The trial court found that, although Joshua may not have intended to relinquish all of his parental rights, he clearly did intend to relinquish custody. As such, he was also unfit based on desertion.

¶ 22    Following the trial court's ruling, Joshua filed a timely notice of appeal.

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, Joshua argues that the trial court's finding that he was an unfit parent was against the manifest weight of the evidence. Joshua contends that the trial court failed to consider all the circumstances under which his relationship with L.B. was disrupted. Specifically, he complains that Shaina's overt hostility toward him prevented him from having a relationship with L.B. He did not send L.B. any cards or gifts because, due to Shaina's hostility towards him, he did not believe that L.B. would receive them. Further, he did not attempt to contact Shaina directly because of his well-founded fears that Shaina would falsely accuse him of something. As such, Joshua insists that his actions towards maintaining a relationship with L.B. were reasonable under the circumstances. He further complains that the trial court's ruling is contrary to the public policy against forum shopping, as it rewards Shaina's move from Florida to Illinois to receive more favorable court rulings.

¶ 25    A trial court must find that there is clear and convincing evidence that a parent is unfit. *In re D.F.*, 201 Ill. 2d 476, 494-95 (2002). A trial court's finding of unfitness is afforded great deference because the court has the best opportunity to view and evaluate the parties and their testimony; the trial court's finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* at 498-99. A decision is against the manifest weight of the evidence where the opposite result is clearly evident from the record. *Id.* at 498.

¶ 26    The Adoption Act provides that a court may find a parent unfit if the parent fails to maintain reasonable concern, interest, or responsibility for the welfare of a child. 750 ILCS 50/1(D)(b) (West 2022). Our supreme court has stated:

"[I]n determining whether a parent showed reasonable concern, interest or responsibility as to a child's welfare, we have to examine the parent's conduct concerning the child in the context of the circumstances in which that conduct occurred. Circumstances that

warrant consideration when deciding whether a parent's failure to personally visit his or her child establishes a lack of reasonable interest, concern or responsibility as to the child's welfare include the parent's difficulty in obtaining transportation to the child's residence [citation], the parent's poverty [citation], the actions and statements of others that hinder or discourage visitation [citation], and whether the parent's failure to visit the child was motivated by a need to cope with other aspects of his or her life or by true indifference to, and lack of concern for, the child [citation]." *In re Adoption of Syck*, 138 Ill. 2d 255, 278-79 (1990).

¶ 27 If visitation is impractical, the parent can show reasonable concern, interest, and responsibility in a child through letters, telephone calls, and gifts, depending on the frequency and tone of those communications. *In re Gwynne P.*, 346 Ill. App. 3d 584, 591 (2004). Courts will consider the parent's efforts that show interest in the child's well-being, regardless of whether those efforts were successful. *Syck*, 138 Ill. 2d at 279.

¶ 28 Here, the trial considered all the relevant circumstances in determining that Joshua was unfit. The record reveals that Joshua has had no contact with L.B. since July 7, 2019. He has not attempted to visit her since November 2019. He has not sent her any cards or gifts or attempted to call her during that time. He has not provided her any financial assistance even though he had the means to do so. The trial court's determination that Joshua demonstrated neither reasonable concern, interest, nor responsibility for L.B. was not against the manifest weight of the evidence.

¶ 29 Joshua blames Shaina for his failure to have any interaction with L.B. His argument would be persuasive had he raised it in 2019 when Shaina (1) moved L.B. out of Florida to Illinois without court permission, (2) interfered with Joshua's parental rights by obtaining an order of protection against him on baseless grounds, and (3) refused to comply with a court order and surrender

custody of L.B. to Joshua. In response to Shaina's actions, Joshua essentially did nothing. He could have sought to have Shaina held in contempt of court. He could have worked with both the Florida and Illinois courts to maintain a relationship with L.B. Again, however, he did not.

¶ 30    Joshua asserts that he did not attempt to do more to maintain a relationship with L.B. because he did not believe that his efforts would be successful. However, as set forth above, our courts consider what efforts a parent made to stay a part of his child's life, not whether those efforts were successful. *Id.* Joshua's failure to attempt to maintain a relationship with L.B. since November 2019, even considering the roadblocks Shaina placed in his way before then, was simply not reasonable.

¶ 31    As we have determined that the trial court's finding that Joshua was unfit because he failed to show reasonable concern, interest, and responsibility for L.B., we need not address whether Joshua was also unfit based on desertion. See *In re D.D.*, 196 Ill. 2d 405, 422 (2001) (a finding of unfitness will stand if supported by any one of the statutory grounds set forth in section 1(D) of the Adoption Act).

¶ 32    We also reject Joshua's argument that the trial court's ruling is against public policy because it rewards Shaina for moving the litigation regarding L.B. from Florida to Illinois. Again, this argument would have been more persuasive had Joshua raised it in 2019 or shortly thereafter. However, as Joshua sought no relief from the Florida courts after November 2019, Shaina's decision to pursue an adoption action in Illinois in September 2021 did not violate any public policy.

¶ 33                                    III. CONCLUSION

¶ 34    For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 35    Affirmed.

**In re L.B., 2023 IL App (2d) 230175**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County; Nos. 21-AD-51, 22-FA-89; the Hon. Stacey L. Seneczko, Judge, presiding. |
| **Attorneys for Appellant:** | Matthew Kaplan, of Libertyville, for appellant. |
| **Attorneys** | Sally A. Lichter, of Libertyville, for appellees. |

**for**
**Appellee:**